IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:16-CV-305-BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CATHERINE ANN LANG, a/k/a | ) | |
| "Catherine Lang", "Catherine Lang-Murgo", | ) | |
| "Catherine A. Cashin", "Caterine Lang", | ) | |
| "Cathy Duden", "Kathy Duden", "Cathy | ) | |
| Lang", "Catherine McDowell", | ) | |
| | ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure. The appropriate responses and replies have been filed, and a hearing was held on the motion before the undersigned on March 15, 2017, at Raleigh, North Carolina. For the reasons discussed below, defendant's motion is granted and this action is dismissed.

## BACKGROUND

In its amended complaint, plaintiff, the government, alleges as follows. On or around March 21, 2001, defendant completed an application for social security disability benefits with a purported disability onset date of July 30, 2000. Defendant represented that the conditions which limited her ability to work were severe low back and neck pain, right hemiparesis, traumatic brain injury, poor concentration, headaches, PTSD, and depression; these conditions were allegedly attributable to an automobile accident which occurred on July 30, 2000. Defendant's application was approved in July 2001. Defendant received monthly social security benefits

from August 2001 to January 2012. In August 2001, defendant applied for child's disability benefits on behalf of her son and requested to be the approved payee for her son's benefits. Defendant's application for child's disability benefits was also approved and defendant received monthly social security benefits for her son from August 2001 to January 2006; payment of defendant's son's benefits was conditioned on defendant's own eligibility for social security disability benefits.

The government alleges that, shortly after defendant began to receive social security disability benefits on behalf of herself and her son, defendant's medical condition improved such that she would have been able to work and, additionally, that defendant began engaging in substantial gainful activity, both of which would disqualify her from receiving disability benefits. Specifically, the government alleges that in April 2002 Unburied Treasure by the Sea, Inc., an art gallery, was incorporated in North Carolina, with defendant's son listed as president and defendant's sister listed as secretary/treasurer. A newspaper article published in June 2002 identified defendant as the owner of Unburied Treasure. In July 2004, defendant's sister completed a report of continuing disability on behalf of defendant indicating that defendant continued to be disabled because she required assistance "due to continuing visual impairment." [DE 11]. In 2004 and 2005, defendant discussed in online forums both the art gallery and her work with stained glass. In 2007, defendant was listed as teacher of a stamping program and a yoga class at the Surf City Community Center. In November 2011, defendant returned a work activity report indicating that she had not worked since July 2000 and that she was then currently employed as a yoga instructor but that she had not started working yet. Between tax years 2002 and 2008, Unburied Treasure received during its highest grossing year (2003) $33,148 in gross receipts and during its lowest grossing year (2008) $3,432 in gross receipts.

The amended complaint alleges that defendant knowingly accepted social security benefits to which she was not entitled for herself totaling $179,567 from April 2003 through January 2012 and for her son totaling $27,023 from April 2003 through February 2006. The Social Security Administration has made a demand to defendant for repayment and defendant has refused repayment.

The government raises three claims under the False Claims Act: for submission of false claims under 31 U.S.C. § 3729(a)(1)(A), for false statements to get a claim paid under 31 U.S.C. § 3729(a)(1)(B), and for concealment or avoidance of an obligation to pay or transmit money to the United States under 31 U.S.C. § 3729(a)(1)(G). Also alleged are common law claims for payment by mistake of fact and for unjust enrichment/restitution. The government seeks an amount equal to the money mistakenly paid to defendant plus interest as well as treble damages, the costs of investigation and prosecution, and civil penalties for each false claim as allowed by law. Defendant has moved to dismiss the complaint against her for failure to plead facts with particularity sufficient to state claims upon which relief can be granted. Fed. R. Civ. P. 9(b); 12(b)(6).

## DISCUSSION

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard on claims of fraud or mistake, requiring a party to "state with particularity the circumstances constituting fraud or mistake," but allowing state of mind to be pled generally. Fed R. Civ. P. 9(b). "These facts are often 'referred to as the 'who, what, when, where, and how' of the alleged fraud.'" *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (citation omitted). However, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *United States ex rel. Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (*Harrison I*).

The first question for the Court is whether the government has pleaded with sufficient specificity to allow it to seek to recover treble damages and penalties for alleged overpayment of social security disability benefits. The second question is whether the remedial scheme contemplated by the Social Security Act would preempt the government's attempt to rely on the common law to recover the alleged overpayment. The Court addresses each question in turn.

I. *False Claims Act claims*

The False Claims Act (FCA) was enacted following the Civil War to address fraud by contractors perpetrated during the war. *United States v. Bornstein*, 423 U.S. 303, 309 (1976). The focus of the FCA

4

> remains on those who present or directly induce the submission of false or fraudulent claims. See 31 U.S.C. § 3729(a) (imposing civil liability on "any person who ... knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"). A "claim" now includes direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs. See § 3729(b)(2)(A). The Act's scienter requirement defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." § 3729(b)(1)(A). And the Act defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." § 3729(b)(4).

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) (*Escobar*). Civil penalties under the FCA are punitive in nature, with defendants being subject to treble damages plus civil penalties of up to $10,000 per false claim. *Id.* (citing 31 U.S.C. § 3729(a)).

The government's first claim for relief under § 3729(a)(1)(a) alleges that defendant made a false claim for payment, commonly referred to as a 'presentment action'; the government's second claim for relief under § 3729(a)(1)(b) is commonly referred to as a 'false statement action' and is "'designed to prevent those who make false records or statements in order to get claims paid or approved from escaping liability solely on the ground that they did not *themselves* present a claim for payment or approval.'" *Pencheng Si v. Laogai Research Found.*, 71 F. Supp. 3d 73, 87 (D.D.C. 2014) (internal alteration omitted) (quoting *United States ex rel. Totten v. Bombardier Corp.*, 380 F.3d 488, 501 (D.C.Cir. 2004) (emphasis in original)). A false statement claim is complementary to a presentment claim. *Pencheng*, 71 F. Supp. 3d at 87. Thus, central to both the government's presentment and false statement claims is the presence of a false or fraudulent claim. Indeed, "[i]n order for a false statement to be actionable under the False Claims Act it must constitute a 'false or fraudulent claim.' The statute attaches liability, not to

the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment.'" *Harrison I*, 176 F.3d at 785 (internal alterations, quotation, and citation omitted).

Importantly, the government does not allege that defendant was improperly awarded social security disability benefits on behalf of herself or her son. Rather, the government's theory of liability rests primarily on defendant's access to funds deposited by the Social Security Administration into her account on a monthly basis since she allegedly became able to work or began to engage in substantial gainful activity and was no longer entitled to benefits. The government agrees that its theory is best described as an implied false certification theory. Such theory is based on a premise that each submission of a claim for payment to the government impliedly certifies that the claimant has complied with all conditions of payment. The Supreme Court, in resolving a circuit split on the availability of the implied false certification theory, recently held that it can be a basis for liability upon satisfaction of two conditions: "first, the claim does not merely request payment, but also makes specific representations about the goods or services provided; and second, the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *Escobar*, 136 S. Ct. at 2001.

Here, defendant correctly contends that the government has failed to sufficiently allege that defendant made a false claim because, in accessing funds in her bank account, defendant cannot be considered to have done anything more than demand payment, and the government has failed to identify any specific representations made by defendant containing half-truths which were *presented* when defendant made such demand. *See, e.g. United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 333 (9th Cir. 2017) (FCA liability unavailable without evidence that actual claim submitted, in this case public vouchers, contained false or inaccurate statements);

6

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 454-456 (4th Cir. 2013) (allegation of fraudulent scheme insufficient; "a claim actually must have been submitted to the federal government for reimbursement" to support FCA liability). While the Court recognizes that the term "claim" in this context is not to be narrowly construed, *Harrison I*, 176 F.3d at 785-86, the government's theory in this case requires more than a broad construction. The FCA is not, however, "'an all-purpose antifraud statute,' or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Escobar*, 136 S. Ct. at 2003 (quoting *Allison Engine Co. v. U.S. ex rel. Sanders*, 553 U.S. 662, 672 (2008)).

The government further relies on statements made by defendant's sister in 2004 and by defendant in November 2011 as evidence of false statements made in support of a false claim. First, as the government concedes, the statements by defendant's sister were made outside of the FCA's ten year statute of repose. As to defendant's own work activity report submitted in November 2011, even if false, it is not itself a claim for payment. As discussed above, a false statement is not actionable under the FCA unless it supports or constitutes a false claim. *Nathan*, 707 F.3d at 454. As the government has failed to allege that defendant actually submitted a false claim, its theory of liability based on a false statement also fails.

The absence of a false claim is further detrimental to the government's reverse false claim provision claim under § 3729(a)(1)(G). A party is prohibited by the FCA under § 3729(a)(1)(G) from making false claims or statements for the purpose of avoiding an "'obligation' to pay the government, and Congress intended the relevant triggering 'obligation' to be defined broadly in the post-FERA version of the statute".[1] *Pencheng*, 71 F. Supp. 3d at 95.

---

[1] In 2009, Congress passed the Fraud Enforcement and Recovery Act (FERA), Pub. L. No. 111-21, to amend the FCA. With exception not applicable here, the pre-FERA version of the statute applies to conduct which occurred prior to May 20, 2009. However, neither party has argued nor has the Court found that any difference between the pre-and-post-FERA versions of the FCA is

7

Here, however, defendant did not have an "obligation" to remit the funds she received prior to notification that she had been deemed ineligible to receive disability benefits; "at most, [defendant] merely had a potential liability and not an established duty." *Olson v. Fairview Health Servs. of Minnesota*, 831 F.3d 1063, 1074 (8th Cir. 2016).

At bottom, the Court finds that the government has failed to state a plausible claim that defendant violated the FCA by continuing to receive social security disability benefits after she allegedly was able to or had returned to work. This is plainly not the paradigmatic application of the FCA involving submission to the government of a claim for payment for work performed by a contractor. While the FCA certainly encompasses broader conduct than the paradigmatic case, and while this is not the only case in which the government has elected to bring FCA claims against an allegedly underserving social security disability beneficiary,[2] the Court has found no authority which persuades it that the punitive scheme contemplated by the FCA, what could here amount to more than $1 million[3] in damages and penalties if the government's request is allowed, is appropriate in the context of a remedial statute such as the Social Security Act. This holding rests on the government's failure here to allege a demonstrable *claim* made by defendant to the government for payment which was false or fraudulent.[4] This does not leave the

---

material to its inquiry into the sufficiency of the government's allegations. *See, e.g. United States ex rel. Bennett v. Medtronic, Inc.*, 747 F. Supp. 2d 745, 764 n.17 (S.D. Tex. 2010).
[2] *See, e.g., United States ex rel. McCandliss v. Sekendur*, 282 Fed. App'x 439 (7th Cir. 2008) (claimant who made false claim in application for benefits found to have violated FCA); *United States v. Madigan*, No. CV 15-19-BU-BMM-JCL, 2016 WL 8674591, at *1 (D. Mont. June 24, 2016), *report and recommendation adopted,* No. CV 15-19-BU-BMM, 2016 WL 3753081 (D. Mont. July 11, 2016) (granting summary judgment to government on payment by mistake claim but not on FCA claim).
[3] This represents treble actual damages plus a maximum civil penalty of $10,000 per month from 2003 to 2012.
[4] This case is distinguishable from, for example, an FCA case brought against a social security lawyer who conspired with an administrative law judge to grant disability benefits to non-disabled claimants. *See, e.g. United States ex rel. Griffith v. Conn*, 117 F. Supp. 3d 961, 975

8

government without a mechanism to collect overpaid funds. As discussed below, Congress has enacted a scheme to recover improperly paid social security disability benefits, which provides for a determination by the Commissioner of Social Security as to the appropriateness of the recovery and is a proper avenue to the relief which the government seeks.

II.  *Common law claims*

The government's common law claims for payment by mistake and unjust enrichment are also dismissed. Courts have concluded that the federal laws which regulate the receipt of social security benefits preempt potentially conflicting state law. *See Foley v. Sullivan*, 967 F.2d 585 (9th Cir. 1992). 42 U.S.C. § 404 provides a procedure for recoupment of overpaid social security disability funds, as well as protections for disability benefit recipients who may not be required to repay any overpayment if found to be without fault. 42 U.S.C. §§ 404(a);(b)(1). The determination as to whether an individual is without fault is first made by the Commissioner of Social Security. *Id.*; *see also Viehman v. Schweiker*, 679 F.2d 223, 227 (11th Cir. 1982) (review of the Commissioner's fault determination limited to substantial evidence standard). Though the government argues that it has alleged that defendant is not without fault, it has failed to allege that any determination as to defendant's fault has actually been made by the Commissioner. As a judgment finding defendant to have been unjustly enriched or paid by mistake could be in conflict with a determination by the Commissioner that defendant is without fault and not required to refund any or all overpayment, the Court finds the government's common law claims properly subject to dismissal without prejudice.

## CONCLUSION

---

(E.D. Ky. 2015). In such a case, a fraudulent claim would lie in the claimant's application for benefits and the attorney's application for fees.

Accordingly, for the foregoing reasons, defendant's motion to dismiss this action in its entirety [DE 15] is GRANTED. The clerk is directed to close this case.

SO ORDERED, this 21 day of April, 2017.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE